IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PINEDA TRANSPORTATION, ) | |
| LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | NO. 3:18-cv-0089 |
| v. ) | JUDGE TRAUGER |
| ) | |
| FLEETONE FACTORING, LLC, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

Pending before the court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim (Doc. No. 38). For the reasons stated herein, Defendants' Motion will be granted in part and denied in part.

INTRODUCTION

Plaintiffs Pineda Transportation, LLC ("Pineda"), Pineda Investment Group, LLC, and Gulf Express, LLC, are companies engaged in the trucking industry. Defendants FleetOne Factoring, LLC ("FleetOne") and WEX Bank are companies engaged in the business of factoring. Plaintiffs assert that FleetOne is a two-member limited liability company whose members are WEX Bank (a corporation operating in Tennessee as "Fleet Fuel") and TransPlatinum Services (a one-member limited liability company whose sole member is SunTrust Bank). Defendant Sturm is the Chief Credit Officer of FleetOne and of WEX Bank.

Factoring is the buying of accounts receivable at a discount. Factoring, as described in the First Amended Complaint, involves a company selling its invoices to a third party who immediately

pays a percentage of the invoices and then invoices the company's customers and collects the funds. Each of the Plaintiffs alleges that it had a contract with Defendants under which Defendants bought Plaintiffs' invoices for a percentage (90-98.5%) of their face value. Plaintiffs contend that Defendants were supposed to invoice Plaintiffs' customers and collect the payments. Defendants were entitled to collect 1.5% for their service fees and were supposed to place any balance over the face value collected into reserve accounts for the Plaintiffs. Plaintiffs allege that Defendants failed to invoice Plaintiffs' customers; Defendants failed to pay out reserve amounts collected on invoices to Plaintiffs; Defendants failed to process and post payments made by Plaintiffs' customers to Plaintiffs' accounts; and Defendants charged back invoices for amounts greater than Defendants advanced or were due. In the First Amended Complaint, Pineda alleges breach of contract; Pineda and Pineda Investment Group allege fraud (alternatively, constructive fraud), and Pineda, Pineda Investment Group and Gulf Express allege violations of civil RICO.

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to

dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

## BREACH OF CONTRACT

In Tennessee, a viable claim for breach of contract has three essential elements: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of that contract; and (3) damages caused by the breach of contract. *Carrigan v. Arthur J. Gallagher Risk Mgmt. Servs., Inc.*, 870 F.Supp.2d 542, 550 (M.D. Tenn. 2012); *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006).

Defendants argue that Plaintiffs have failed to state a claim for breach of contract because they have not identified specific contract language under which Defendants materially failed to perform. Defendants assert that the agreements between them and Plaintiffs contain no time requirements or standards for the billing or collection of invoices. Defendants point out that the sales of accounts to Defendants were "true and actual sales of the accounts," and Defendants became the "absolute owners" of those accounts. Plaintiffs, on the other hand, contend that each of these Agreements includes an implied covenant of good faith and fair dealing that was breached by Defendants. Plaintiffs argue that these contracts include an implied duty to invoice the customers, not to charge excessive fees, and to properly pay Plaintiffs' reserve amounts.[1]

---

[1] Both sides attempt to rely on a Declaration of Michael Sturm. Plaintiffs first object to it (Docket No. 40 at 2) and then attempt to rely upon it (*Id*. at 7), but they cannot have it both ways. The court may not consider documents outside the pleadings, except for those that are clearly integral to the complaint and, therefore, has not considered this Declaration. *Weaver v. Prudential Ins. Co. of America*, 763 F.Supp.2d 930, 937 (M.D. Tenn. 2010).

None of the contracts at issue was filed with the original Complaint (Docket No. 1) or the First Amended Complaint (Docket No. 31). Defendants filed three contracts (plus amendments) with their original Motion to Dismiss (Docket No. 27). The first is a December 3, 2013 Accounts Purchase Agreement between FleetOne and Pineda Investment Group d/b/a Pineda Transport. Docket No. 27-1. The First and Second Amendments to that Agreement are also between FleetOne and Pineda Investment Group d/b/a Pineda Transport (Docket Nos. 27-2 and 27-3), but the purported Third and Fourth Amendments to that Agreement (Docket Nos. 27-4 and 27-5) are between WEX Bank and Pineda Investment Group d/b/a Pineda Transport. Defendant Sturm signed the Agreement and the Amendments as Chief Credit Officer for both FleetOne and WEX Bank. The court has found no contract between WEX Bank and any of the Plaintiffs in the court record, and it appears that the parties treated FleetOne and WEX Bank as the same entity.

The second Accounts Purchase Agreement, dated December 31, 2015, is between FleetOne and Pineda. Docket No. 27-6. Both the First and Second Amendments to that Agreement, however, are between WEX Bank and Pineda. Docket Nos. 27-7 and 27-8. Again, Defendant Sturm signed as Chief Credit Officer of both FleetOne and WEX Bank. Again, it appears that the parties treated FleetOne and WEX Bank as the same entity. Finally, the third Accounts Purchase Agreement is dated May 18, 2015, and is between FleetOne and Gulf Express, LLC. Docket No. 27-9. No Amendments to this Agreement were filed.

The contracts at issue are essentially identical. They provide that FleetOne "will forward all invoices to the respective Customer." Docket Nos. 27-1, 27-6 and 27-9 at § 3.3. The contracts provide that, from the date of purchase until payment in full is received by FleetOne, FleetOne is entitled to a discount fee of 1.50% for the first thirty days and a discount fee of an additional 1.25% for every sixty-day period that the invoice remains unpaid. *Id*. at § 1.3. Thus, the discount fee

4

received by Defendants increases the longer the invoice goes unpaid. The contracts also provide that, if the invoice remains unpaid or subject to a dispute after ninety days from the date of the invoice, then the amount of the account may be charged back by FleetOne to Plaintiffs. *Id.* at § 3.2.

Plaintiffs allege that Defendants have failed to send invoices and then deducted the amounts of those invoices as "charge backs" from Plaintiffs' reserve accounts, even though the accounts were never invoiced. Plaintiffs also contend that, instead of charging back the amounts they advanced, Defendants charged back the full amounts (100% of face value) on the invoices and retained all additional amounts. In other words, Plaintiffs allege that Defendants have benefitted from delaying and not sending the invoices, causing Plaintiffs to lose money. Plaintiffs aver that Defendants are profiting, whether they perform under the contract or not. Plaintiffs allege that Defendants' actions not only prevented Plaintiffs from receiving the reserve amounts to which they are entitled, but also caused two of the companies (Pineda Investment Group, LLC, and Gulf Express, LLC) to shut down and damaged Pineda's long-standing reputation. Docket No. 31 at 3.

Defendants' contention that Plaintiffs' allegations are conclusory or speculative and not sufficiently pled with particularity is belied by the many specific examples in the First Amended Complaint. *See* Docket No. 31 at ¶¶ 67-68 (specific payments made but not credited to Plaintiffs' accounts); ¶ 74 (invoices not being sent and Defendants' debiting Plaintiffs' accounts); ¶¶ 80-81 (wrongful charge-backs); ¶ 85 (receiving payment but never crediting the customer's account); ¶¶ 86-87 (giving money back to customers and then charging back full amount to Plaintiffs); and ¶¶ 115-16 (specific alleged "racketeering" actions).

In interpreting a contract, the role of the court is to ascertain and give effect to the intent of the parties. *Spirit Broadband, LLC v. Armes*, 2017 WL 384248 at * 6 (Tenn. Ct. App. Jan. 27, 2017) (citing *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009)). The task is to ascertain the intention

5

of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Federal Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002). The interpretation should be one that gives reasonable meaning to all the provisions of the agreement, without rendering portions of it neutralized or without effect. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008). Determination of the intention of the parties is generally treated as a question of law because the words of the contract are definite and undisputed, and, in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide. *Planters Gin*, 78 S.W.3d at 890. The entire agreement must be considered. *Maggart*, 259 S.W.3d at 704; *Spirit Broadband*, 2017 WL 384248 at * 6.

Here, considering the agreement as a whole, particularly the provisions cited above, it is evident to the court that the intention of the parties was for Defendants to purchase Plaintiffs' accounts receivable, evidenced by invoices. It is also clear that the parties intended for Defendants then to send or "bill" those invoices to the customers and receive all payments. Furthermore, it is clear that the parties intended for Defendants to keep a "reserve account" for Plaintiffs, into which additional money (after Defendants paid themselves) would be placed and provided to Plaintiffs. Indeed, the underlying purpose of the contract was for Defendants to advance monies to Plaintiffs and then invoice Plaintiffs' customers.

If, as Plaintiffs allege, Defendants failed to send out the invoices for customers, that failure would be contrary to the intentions of the parties. If, as Plaintiffs allege, Defendants kept the full amount of accounts that were paid, rather than keeping only the amounts they advanced plus their fees, that action also would be contrary to the intentions of the parties. If, as Plaintiffs allege, customers made payments that Defendants never credited to Plaintiffs' account, that action would be contrary to the intentions of the parties. If, as Plaintiffs allege, Defendants returned money to customers and then

charged those amounts back to Plaintiffs instead, that also would be contrary to the intentions of the parties as expressed in the agreements.

Plaintiffs have sufficiently alleged that these actions by Defendants violated the common law duty of good faith and fair dealing. Tennessee law imposes a duty of good faith in the performance of contracts. *Coleman v. Wells Fargo Banks*, 218 F.Supp.3d 597, 606 (M.D. Tenn. 2016). As a result of this covenant, each contracting party promises to perform its part of the contract in good faith and, in return, expects the other party to do the same. *Id*. at 606-07. The purpose of the implied duty is (1) to honor the reasonable expectations of the contracting parties and (2) to protect the rights of the parties to receive the benefits of the agreement into which they entered. *Cadence Bank v. The Alpha Trust*, 473 S.W.3d 756, 769 (Tenn. Ct. App. 2015). Generally, there is an implied covenant of good faith and fair dealing in every contract, whereby neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract. *Dick Broadcasting Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 662 (Tenn. 2013). If, as alleged by Plaintiffs, Defendants took the actions listed above and set forth in the First Amended Complaint, those actions could reasonably state a claim for violating the covenant of good faith and fair dealing imposed on every contract in Tennessee.

For these reasons, Plaintiffs have sufficiently alleged, for purposes of a motion to dismiss, that Defendants breached the contracts between Defendants and Plaintiffs. Any factual issues with regard to these allegations must be determined at a later stage of the litigation.

FRAUD

The Federal Rules of Civil Procedure provide that a party alleging fraud must state, with particularity, the circumstances constituting the fraud. Fed. R. Civ. P. 9(b). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. *Id*. To plead fraud with

particularity, a plaintiff must allege (1) the time, place and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury. *Power & Telephone Supply Co., Inc. v. Suntrust Banks,* Inc., 447 F.3d 923, 931 (6th Cir. 2006); *United States ex rel. Kreipke v. Wayne State Univ.*, 2014 WL 6085704 at * 3 (E.D. Mich. Nov. 13, 2014).

Fraud occurs when a person intentionally misrepresents a material fact or intentionally produces a false impression in order to mislead another or to obtain an unfair advantage. *Orlowski v. Bates*, 146 F.Supp.3d 908, 924 (W.D. Tenn. 2015); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001). The representation must have been made with knowledge of its falsity and with a fraudulent intent. The representation must have been to an existing or past fact that is material, and the plaintiff must have reasonably relied upon that misrepresentation to his injury. *Id*.

In Count 3 of the First Amended Complaint, Plaintiffs Pineda and Pineda Investment Group have alleged, with specific examples (the who, what, when, where and how), that Defendants defrauded them by intentionally not billing some of the invoices they purchased from Defendants in order to collect larger fees and then charging back the full amount to Pineda and Pineda Investment; by taking more fees than allowed under the agreement; by failing to credit a customer's account when payments were received; and by giving money back to customers and then debiting Plaintiffs' accounts for more than Defendants advanced. Doc. No. 31 at ¶¶ 70-92. These alleged misrepresentations concerned existing and/or past material facts as to whether invoices had been billed, paid and/or properly credited to Plaintiffs' account and whether Defendants retained the correct amounts of fees. Plaintiffs Pineda and Pineda Investment have sufficiently alleged that they reasonably relied upon Defendants' agreement to invoice their customers and act in good faith in collecting the invoices. In addition, Plaintiffs have sufficiently alleged that, because of that reliance, they suffered injury.

8

Even under the stricter requirements of Fed. R. Civ. P. 9(b), Plaintiffs have sufficiently alleged fraud by Defendants, particularly because of the specific examples given. With regard to the allegations made "upon information and belief," those allegations challenged by Defendants involve Defendants' intent (¶¶ 73 and 75), Defendants' business model (¶ 77), and whether Defendants use the same billing practice with all their clients (¶ 83), all information within Defendants' control.

Given this holding, the court will not address Plaintiffs' alternative claim for constructive fraud at this time.

## CIVIL RICO

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, provides that it shall be unlawful for any person employed by or associated with any enterprise engaged in interstate or foreign commerce to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). To state a claim under this statute, a plaintiff must plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Orlowski,* 146 F.Supp.3d at 928. A plaintiff must prove the existence of (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged. *Western and Southern Life Ins. Co. v. JPMorgan Chase Bank*, 54 F.Supp.3d 888, 917-18 (S.D. Ohio 2014).

A RICO "enterprise" is a group of persons associated together for a common purpose of engaging in a course of conduct. *Shields v. Unumprovident Corp.*, 2011 WL 924724 at ** 4 (6th Cir. March 17, 2011). An enterprise can include any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

9

*Orlowski*, 146 F.Supp.3d at 928. A properly pled RICO claim must cogently allege activity that would show ongoing, coordinated behavior among the defendants in order to constitute an association-in-fact. *Shields* at \*\*4. A complaint must allege facts suggesting that the behavior of the listed entities is "coordinated" in such a way that they function as a "continuing unit." *Begala v. PNC Bank, Ohio, Nat'l Ass'n.*, 214 F.3d 776, 781-82 (6th Cir. 2000).

The enterprise itself is not liable for RICO violations; rather, the "persons" who conduct the affairs of the enterprise through a pattern of racketeering activity are liable. *Id.* A plaintiff must allege the existence of two distinct entities: a "person" and an "enterprise" that is not simply the same "person" referred to by a different name. *In re ClassicStar Mare Lease Litigation*, 727 F.3d 473, 490 (6th Cir. 2013); *The Adams Group, Inc. of Middle Tenn. v. Tunnell*, 2014 WL 2781128 at \*6 (M.D. Tenn. June 19, 2014). In interpreting RICO, courts have applied a "distinctness" requirement, which requires that the person charged with violating RICO be a separate entity from the enterprise. *Shields* at \*\*4. For example, a corporation may not be liable for participating in the affairs of an enterprise that consists only of its own subdivisions, agents or members; in other words, a corporation cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself. *Adams Group* at \*6; *Begala*, 214 F.3d at 781.[2] The distinctness requirement may be satisfied, however, when a parent corporation uses the separately incorporated nature of its subsidiaries to perpetrate a fraudulent scheme. *Western and Southern Life Ins. Co.*, 54 F.Supp.3d at 918 (citing *ClassicStar*, 727 F.3d at 493).

---

[2] If RICO imposed liability on a corporation for the ordinary conduct of its agents and employees, every claim of corporate fraud would automatically become a violation of RICO. *ClassicStar Mare Lease Litig.*, 727 F.3d at 490.

Plaintiffs allege that Defendants and unnamed "Corporate Co-conspirators" associated together for the common purpose of engaging in a course of conduct and were associated with an enterprise whose conduct involved a pattern of racketeering activities. Doc. No. 31 at ¶¶ 100-104. As noted, Defendants FleetOne and WEX Bank have acted and have been treated as the same entity. Plaintiffs contend that FleetOne and WEX Bank together committed the alleged breaches of contract, the alleged fraud, and the civil RICO violations. As also noted, Defendant Sturm acted as Chief Credit Officer of both FleetOne and WEX Bank.

Defendants contend that Plaintiffs have not shown that the "persons" and the "enterprise" in this situation are separate from each other or separate from the pattern of racketeering activity. Defendants also argue that Plaintiffs have not alleged ongoing coordinated behavior or that the group functioned as a continuing unit. Defendants also maintain that neither Pineda Investment nor Gulf Express has set forth allegations sufficient to state a RICO claim.

Plaintiffs assert that the "enterprise" includes FleetOne, WEX Bank, Sturm and the unnamed Corporate Co-conspirators. The court finds that Plaintiffs have sufficiently alleged that FleetOne, WEX Bank and Sturm are a group of persons associated together for a common purpose of engaging in a course of conduct.[3] Plaintiffs have not, however, sufficiently alleged that FleetOne, WEX Bank

---

[3] To assert such an "association-in-fact," a plaintiff must show: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Dimov v. EMC Mortgage Corp.*, 2010 WL 2506717 at * 4 (E.D. Tenn. June 17, 2010) (citing *Boyle v. United States*, 129 S.Ct. 2237 (2009)).

and Sturm[4] are separate and distinct from the alleged "enterprise"[5] or that the "enterprise" is separate from the pattern of racketeering activity in which is allegedly engaged. *See Williamson v. Ocwen Loan Serv.*, 2009 WL 5205405 at * 4 (M.D. Tenn. Dec. 23, 2009); *City of Cleveland v. Woodhill Supply, Inc.*, 403 F.Supp. 2d 631, 635 (N.D. Ohio 2005). As stated above, the law requires that the person charged with violating RICO be a separate entity from the enterprise and requires that the enterprise be separate from the pattern of racketeering activity. If a plaintiff alleges, for example, that a corporation is a RICO enterprise, then that plaintiff cannot simultaneously allege that the corporation is also a person illegally engaged in racketeering activity. *Begala*, 214 F.3d at 781; *Dimov v. EMC Mortgage Corp.*, 2010 WL 2506717 at * 4 (E.D. Tenn. June 17, 2010). Plaintiffs have failed to sufficiently allege these requirements. Therefore, Plaintiffs have not sufficiently alleged a claim for civil RICO, and that claim will be dismissed.

## DECLARATORY RELIEF

Plaintiffs ask the court to declare that Defendants are "required" to do and not do certain things under their Agreements with Plaintiffs. Defendants argue that their Agreements with Pineda Investment and Gulf Express are no longer in force and, therefore, any declaration about those Agreements would be moot. Defendants also contend that the terms of their Agreements with Pineda are clear and that such declarations concerning those Agreements are unnecessary.

---

[4] The court is aware that the Supreme Court has held that a natural person, such as Sturm, is distinct from a corporation, even if he is the owner or an employee thereof. *Cedric Kushner Promotions, Ltd. v. King*, 121 S.Ct. 2087, 2088 and 2091 (2001).

[5] Pursuant to the requirement of distinctness, the person and the enterprise may not be the same entity. *Dimov* at * 5 (citing *Begala*, 214 F.3d at 781).

The Declaratory Judgment Act states that, in a case of actual controversy within its jurisdiction, the court may declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C. § 2201. The Act, however, does not create an independent cause of action. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007). The point of the Act is to create a remedy for a preexisting right. *Emergency Medical Care Facilities v. BlueCross BlueShield of Tenn., Inc.*, 2017 WL 237650 at * 9 (W.D. Tenn. Jan. 19, 2017).

The Sixth Circuit has adopted a five-factor test to assess the propriety of a federal court's exercise of discretion in a Declaratory Judgment Act case: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase the friction between federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Amsouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004); *Scottsdale Ins. Co. v. Roumph,* 211 F.3d 964, 968 (6th Cir. 2000).

In this case, a declaration of rights as requested by Plaintiffs is, to a large extent, duplicative of Plaintiffs' other claims, but such a declaration would not, particularly because of factual issues, settle the entire controversy. A declaration of rights as requested could clarify the rights and relations of the parties, but so could a ruling on Plaintiffs' other claims. Under these circumstances, the court, in its discretion, finds that an alternative remedy - decisions on Plaintiffs' remaining breach of contract and fraud claims - is more effective than a declaratory judgment. Therefore, Defendants' Motion to Dismiss Plaintiffs' request for declaratory relief will be granted, and that claim will be dismissed.

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss (Docket No. 38) will be granted in part and denied in part. Plaintiffs' claims for civil RICO violations and for declaratory relief will be dismissed.

ENTER this 9th day of May 2018.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE