UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PINEDA TRANSPORTATION, LLC, )<br>PINEDA INVESTMENT GROUP, LLC, )<br>And GULF EXPRESS, LLC, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>FLEETONE FACTORING, LLC, )<br>WEX BANK, and MICHAEL STURM, )<br> )<br>Defendants. ) | Case No. 3:18-cv-00089<br>Judge Aleta A. Trauger |

# MEMORANDUM

FleetOne Factoring, LLC ("FleetOne") and Wex Bank ("Wex") have filed a Motion for Sanctions or, in the Alternative, to Compel (Docket No. 55), to which Pineda Transportation, LLC, Pineda Investment Group, LLC (collectively, "Pineda"), and Gulf Express, LLC ("Gulf Express") have filed a Response (Docket No. 62), and FleetOne and Wex have filed a Reply (Docket No. 65). FleetOne and Wex have also filed a Motion for Summary Judgment (Docket No. 59), to which Pineda and Gulf Express have filed a Response (Docket No. 66), and FleetOne and Wex have filed a Reply (Docket No. 68). For the reasons set out herein, each motion will be granted in part and denied in part.

# I. BACKGROUND

Pineda and Gulf Express are companies engaged in the trucking industry. FleetOne and Wex are affiliated companies engaged in the business of factoring, a type of third-party collection of accounts receivable. Michael Sturm, who was named individually as a defendant but who has not been served with the plaintiffs' Complaint, is the Chief Credit Officer of FleetOne.

Factoring, as the parties have described it, involves a company selling its invoices to a third party who immediately pays a percentage of the invoices and then invoices the company's customers and collects the funds. Each of the plaintiffs alleges that it had a contract with defendants under which the defendants bought plaintiffs' invoices for a percentage of their face value. The plaintiffs contend that the defendants were supposed to invoice the plaintiffs' customers and collect the payments. The defendants were entitled to collect 1.5% for their service fees and were supposed to place any remaining balance recovered into reserve accounts for the plaintiffs. The plaintiffs allege that the defendants failed to invoice the plaintiffs' customers, failed to pay out reserve amounts collected on invoices to the plaintiffs, failed to process and post payments made by the plaintiffs' customers to the plaintiffs' accounts, and the defendants charged back invoices for amounts greater than the defendants advanced or were due. In the First Amended Complaint, Pineda alleged breach of contract (alternatively, breach of the duty of good faith and fair dealing) and fraud (alternatively, constructive fraud), and all of the plaintiffs alleged violations of civil RICO. (Docket No. 31.)

On March 15, 2018, Wex and FleetOne filed a Motion to Dismiss. (Docket No. 38.) On May 9, 2018, the court granted the motion in part and denied it in part, dismissing the plaintiffs' civil RICO claims and claims for declaratory relief, which left only Pineda's fraud and breach of contract claims pending. (Docket No. 44 at 1.) On June 13, 2018, the court entered an Initial Case Management Order ("ICMO"). (Docket No. 49.) The ICMO set a deadline of June 26, 2018, for the parties to exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) and a deadline of February 16, 2019 for the completion of all written discovery and depositions. (*Id.* at 2.)

The plaintiffs did not produce initial disclosures by the June 26 deadline. On July 15, 2018, counsel for the defendants sent counsel for the plaintiffs an e-mail requesting the disclosures.

(Docket No. 57-1.) The defendants received no disclosures and, on August 2, 2018, counsel for the defendants sent counsel for the plaintiffs another e-mail, asking, this time, whether it would be necessary for the defendants to file a motion to compel the disclosures. (Docket No. 57-2.) The defendants received no response, and, on August 22, 2018, counsel for the defendants sent a letter, apparently transmitted via e-mail as a scanned document, demanding that the disclosures be made within the next two days, or else the defendants would be forced to file a motion to compel. (Docket No. 57-3.)

The plaintiffs eventually served the defendants with initial disclosures on September 5, 2018, before any motion to compel was filed. (Docket No. 57 ¶ 4.) The next day, counsel for the defendants responded with a deficiency letter. (Docket No. 57-4.) The letter identified a number of ways in which the plaintiffs' disclosures were incomplete and required supplementation. First, the defendants complained that the identifying information for some of the individuals and entities disclosed was insufficient. Second, the defendants argued that the methodology by which the plaintiffs' claimed damages had been calculated was not sufficiently explained. Third, the defendants found a statement made by the plaintiffs regarding insurance to be unclear. (*Id.* at 2.) Gary C. Shockley, one of the defendants' attorneys, has filed a Declaration stating that, as of May 1, 2019, the defendants had received no response to the deficiency letter. (Docket No. 57 ¶ 5.)

On November 21, 2018, the defendants served their First Set of Interrogatories and First Request for Production of Documents on the plaintiffs. (Docket No. 57-5.) Counsel for the defendants sent follow-up communications on January 3, 2019 and March 5, 2019, seeking responses to the discovery requests and the deficiency letter. (Docket Nos. 57-6, -7.) Finally, on April 10, 2019, counsel for the defendants and counsel for the plaintiffs met in person. At the in-person meeting, the parties agreed that the plaintiffs would file their responses to the outstanding

3

discovery requests on April 19, 2019, and the Rule 30(b)(6) depositions of the plaintiffs would be completed on May 6 and 7. (Docket No. 57 ¶ 9; Docket No. 58 ¶ 2.) On April 11, 2019, the parties filed a joint motion to extend the deadlines for completing discovery and filing dispositive motions, in light of the plaintiffs' failures to provide the required information and documents. (Docket No. 53.) The court granted the motion. (Docket No. 54.)

As the close of business on the April 19, 2019 deadline approached, the plaintiffs had not yet provided the promised responses. Shockley sent an e-mail inquiring about the status of the discovery to the plaintiffs' attorney, John Tennyson. Tennyson did not respond until April 22, 2019, when he sent a response e-mail, apologizing and explaining that he was still working with Pineda on the responses. (Docket No. 57-8.) As of the May 1, 2019 Shockley Declaration, the plaintiffs had still failed to provide the responses. (Docket No. 57 ¶ 9.) The plaintiffs have also failed to serve any interrogatories, requests for document production, requests for admissions, or notices of deposition of their own, nor did the plaintiffs disclose any experts by their expert disclosure deadline in the ICMO. Finally, the plaintiffs have failed to serve the sole individual defendant in this case, Michael Sturm. (Docket No. 57 ¶¶ 11–13.)

On April 26, 2019, the court held a discovery dispute telephone conference with the parties, as required by the ICMO before the defendants could file a motion to compel or for sanctions. (*See* Docket No. 49 at 2–3.) On May 1, 2019, FleetOne and Wex filed a motion seeking sanctions against the plaintiffs based on their failures to provide the required and agreed-to materials. (Docket No. 55.) FleetOne and Wex request, first, that the plaintiffs' claims be dismissed. In the alternative, they request that the court hold that the plaintiffs are precluded from relying on any evidence that would have been responsive to the discovery obligations that they violated. Finally, the defendants argue that, if the court does not dismiss the plaintiffs' claims or order preclusion of

evidence, the court should at least enter an order compelling the plaintiffs to produce the relevant materials immediately and awarding attorney's fees to FleetOne and Wex. On May 8, 2019, FleetOne and Wex filed a Supplemental Declaration from Shockley stating that, although the parties had agreed for Rule 30(b)(6) depositions to begin on May 6, 2019, no one from plaintiff's side had showed up to the agreed location on that date. After waiting thirty minutes, Shockley dismissed the court reporter and videographer. (Docket No. 58 ¶¶ 1–4.)

The plaintiffs filed a Response on May 15, 2019, along with Declarations by Tennyson and Tennyson's co-counsel, James Wiggington. (Docket Nos. 62–64.) Tennyson admits that he failed to provide the plaintiffs' initial disclosures in a timely fashion, but he claims that he did not receive the deficiency letter and, therefore, did not believe that the initial disclosures were defective. (Docket No. 63 ¶¶ 8–9.) Wiggington states that he did receive the deficiency letter by e-mail but did not notice it at the time. He takes responsibility for that error. (Docket No. 64 ¶¶ 9, 13.) Tennyson states that he has "attempted to respond" to the defendants' discovery requests, but has had difficulty communicating with his clients and obtaining the necessary documents. (*Id.* ¶ 11.) He also claims that he has received several ongoing productions of documents from his clients that have required his review, leading to further delay, but that he is now diligently working to provide the requested documents and information. (*Id.* ¶¶ 13, 15.) Tennyson admits that he is at fault for failing to provide the materials or request additional time for doing so. (*Id.* ¶ 16.) With regard to the scheduled deposition, Tennyson explains that he had believed, from the parties' telephone conversations, that the deposition had been canceled due to the plaintiffs' failure to produce necessary documents in advance of questioning. (*Id.* ¶ 14.) On the same day that the plaintiffs filed their response, FleetOne and Wex filed a Motion for Summary Judgment. (Docket No. 59.)

## II. LEGAL STANDARD

### A. Motions to Compel and Sanctions

Federal Rule of Civil Procedure 37 governs discovery disputes between parties. Rule 37(a) allows a party to file a motion to compel if the opposing party "fails to answer an interrogatory" or gives an "evasive or incomplete" answer. Fed. R. Civ. P. 37(a)(3)(B)(iii), (a)(4). If the motion to compel is granted, or if the discovery is provided after the filing of the motion, the court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). But the court need not award fees if the opposing party was "substantially justified" in withholding discovery, or if "circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

Rule 37(b) allows a party to move for sanctions if the court has issued a discovery order and the opposing party has failed to comply. "'Rule 37(b) usually has no application if there has not been a court order.'" *United States v. Reyes*, 307 F.3d 451, 457 (6th Cir. 2002) (quoting 8A Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2289 (2d ed.1994)).

Finally, Rule 37(d) allows a party to move for sanctions without first moving to compel if the opposing party "fails to serve its [interrogatory] answers, objections, or written response." *Id.* R. 37(d)(1)(A)(ii). "[T]he majority view authorizes Rule 37(d) sanctions when a party's evasive or incomplete answers to proper interrogatories impede discovery." *Jackson v. Nissan Motor Corp.*, No. 88–6132, 1989 WL 128639 (6th Cir. Oct. 30, 1989) (citation and internal quotation marks omitted). The decision to order sanctions is within the court's discretion; "the court is to impose sanctions only if they are just and has discretion about the sanction to be imposed." 8A

Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure § 2291 (3d ed.).

## B. Summary Judgment

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## III. ANALYSIS

## A. Discovery Sanctions

The plaintiffs do not dispute that they have failed to comply with their discovery obligations. They argue, instead, that dismissing claims or precluding evidence would be

7

unnecessarily harsh, at least for now. The plaintiffs suggest that the court should, instead, grant the defendants' motion in part—as a motion to compel—and include, in the court's order, "a provision . . . that any further failure [to comply] should be grounds for dismissal." (Docket No. 62 at 6.)

In determining the scope of a discovery sanction, the Sixth Circuit has directed district courts to consider (1) "whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault," (2) whether the adversary has been prejudiced, (3) whether the disobedient party "was warned that failure to cooperate could lead to the sanction," and (4) whether less drastic sanctions were first imposed or considered. *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997). "Willfulness, bad faith, or fault" can only be found where the party to be sanctioned has displayed "an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008). There is no evidence here sufficient to infer that the plaintiffs actively intended to thwart judicial proceedings, although a case could be made that their actions showed reckless disregard. The defendants have been prejudiced in the form of wasted time and prolonged litigation, although that prejudice does not seem to be severe. This is the court's first formal, written warning to the plaintiffs that they are at risk of sanctions, and the plaintiffs' attorneys assure the court that they have gotten the message.

"The sanction of dismissal is appropriate only if the attorney's actions amounted to failure to prosecute and *no alternative sanction* would protect the integrity of the pretrial process." *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 594 (6th Cir. 2001) (quoting *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir.1980) (emphasis added)). The plaintiffs' actions here arguably do at least walk up to the edge of failure to prosecute, if not necessarily over it. The Sixth

8

Circuit, however, "has expressed an extreme reluctance to uphold the dismissal of a case merely to discipline a party's attorney. *Id.* at 590 (citing *Knoll v. American Tel. & Tel.*, 176 F.3d 359, 363 (6th Cir. 1999)). The plaintiffs' delays in this case appear to have been the result of attorney error or inattention and did not result in the defense requesting a discovery dispute telephone conference with the court, as required before the filing of a motion to compel (Docket No. 49 at 2–3), until well into the plaintiffs' noncompliance. The court will not dismiss the plaintiffs' claims as a sanction for their discovery violations.

The plaintiffs have focused their argument on why the court should not dismiss their claims, with little attention to the issue of preclusion of evidence. In this instance, however, the court is not convinced that evidentiary sanctions offer a viable alternative. If the plaintiffs had simply been dilatory with regard to one aspect of discovery or one class of evidence, a targeted evidentiary sanction might offer the court something of a middle ground. The plaintiffs' failures, however, have affected virtually every aspect of the discovery process since day one. A total exclusion of all of the covered evidence might leave little, if any, intelligible case left to decide. Accordingly, the court will not rely on exclusion of evidence as a sanction for the plaintiffs' discovery violations.

However, given the expenses that the defendants have been forced to expend on these issues, the court holds that it is appropriate to order the plaintiffs to pay the costs and reasonable attorney's fees related to their noncompliance and the defendants' efforts to enforce discovery. The court will order the defendants to provide documentation sufficient for the court to assess an appropriate cost and fees amount.

**B. Summary Judgment**

Avoiding the harshest possible discovery sanctions, however, does not necessarily rescue the plaintiffs' claims, because the defendants also have filed a motion for summary judgment arguing that the plaintiffs are unable to produce evidence sufficient to establish causes of action for breach of contract or fraud. With regard to fraud, the plaintiffs apparently agree, writing, "In [regard to] the fraud claim, there are no genuine issues as to disputed facts, and Defendant is entitled to a judgment as a matter of law on the fraud claim." (Docket No. 66 at 4.) The plaintiffs also agree that their claims against Sturm should be dismissed and that, insofar as any claims of Gulf Express remain pending,[1] they too should be dismissed. The only remaining dispute, therefore, is whether the plaintiffs can produce evidence sufficient to allow a reasonable jury to conclude that Pineda has a cause of action against FleetOne and Wex for breach of contract or breach of the duty of good faith and fair dealing.

In Tennessee, a viable claim for breach of contract has three essential elements: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of that contract; and (3) damages caused by the breach of contract. *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006) (citation omitted). Tennessee law imposes a duty of good faith in the performance of contracts as an implied component of the express terms of performance. *Dick Broadcasting Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 668 (Tenn. 2013). As a result of this covenant, each contracting party promises to perform its part of the contract in good faith and, in return, expects the other party to do the same. *Coleman v. Wells Fargo Banks*, 218 F. Supp. 3d 597, 606–07. (M.D. Tenn. 2016) (Crenshaw, J.). The purpose of the implied duty

---

[1] Gulf Express was not identified as a plaintiff with regard to the fraud and breach of contract claims, but only, rather, the civil RICO claims. Accordingly, it appears that Gulf Express should have been terminated as a party when the civil RICO claims were dismissed.

is (1) to honor the reasonable expectations of the contracting parties and (2) to protect the rights of the parties to receive the benefits of the agreement into which they entered. *Cadence Bank v. The Alpha Trust*, 473 S.W.3d 756, 769 (Tenn. Ct. App. 2015) (citation omitted). FleetOne and Wex argue that the plaintiffs have failed to provide evidence in support of either material nonperformance or, in the alternative, a failure by FleetOne or Wex to perform its duties in good faith. They also argue that the plaintiffs have failed to provide admissible evidence of damages.

The only evidence Pineda cites in support of its breach of contract and breach of duty of good faith and fair dealing claims are two Declarations by the companies' principal, Guadalupe "Vicky" Pineda, filed in January and February of 2018. (Docket Nos. 6-1, 21 (hereinafter, "First Vicky Pineda Declaration" and "Second Vicky Pineda Declaration.") In the First Vicky Pineda Declaration, Ms. Pineda describes, in general terms, what she believed was nonperformance by FleetOne and Wex under the parties' factoring contract. Ms. Pineda, however, does not provide details of any particular accounts that would be sufficient to support a verdict in Pineda's favor. (Docket No. 6-1.) The First Vicky Pineda Declaration is, therefore, insufficient to avoid a summary judgment in the defendants' favor.

The Second Vicky Pineda Declaration consists of a single paragraph, in which Ms. Pineda states that, based on her personal information, knowledge, and belief, the facts in the original Complaint—which has since been superseded as the operative complaint in this case—are true and correct. (Docket No. 21.) Treating the original Complaint as, effectively, the testimony of Ms. Pineda raises issues of foundation and hearsay, because the basis of Ms. Pineda's knowledge of the underlying facts is unclear, and it appears likely that she learned many of the facts from unsworn, out-of-court statements and documents. Nevertheless, Rule 56 does not require that facts offered in support of or opposition to a motion for summary judgment be provided in final,

11

admissible form, if they can be reduced to admissible form at trial. *See Mangum v. Repp*, 674 F. App'x 531, 536–37 (6th Cir. 2017) (citing ting Fed. R. Civ. P. 56(c), advisory committee's note to 2010 amendment)*; see also Mount Vernon Fire Ins. Co. v. Liem Constr., Inc.*, No. 3:16-CV-00689, 2017 WL 1489082, at *3 (M.D. Tenn. April 26, 2017) (Crenshaw, J.) (acknowledging that the court, on a summary judgment motion, may consider evidence presented in hearsay form if the evidence can be reduced to admissible form at trial); *Wilson v. Stein Mart, Inc.*, No. 3:15-CV-01271, 2016 WL 4680008, at *2 (M.D. Tenn. Sept. 7, 2016) (Nixon, S.J.) (same); Jeffrey W. Stempel et al., 11–56 Moore's Federal Practice—Civil § 56.91 (2018) ("Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial."); Charles Alan Wright & Arthur R. Miller et al., 10A Fed. Prac. & Proc. Civ. § 2721 (4th ed.) ("The court and the parties have great flexibility with regard to the evidence that may be used in a Rule 56 proceeding."). FleetOne and Wex do not dispute that the details of the underlying transactions can be presented in admissible form; to the contrary, they have presented many of those details themselves. Accordingly, the court will consider the allegations in the original Complaint, as supported by the Second Vicky Pineda Declaration. The court, however, will not read more into the Declaration than is there—that is, a bare assertion that the entirety of the Complaint is true.

The original Complaint, unlike the First Vicky Pineda Declaration, includes the details of several specific transactions in which FleetOne and Wex allegedly failed to perform their contractual duties for Pineda. (*See* Docket No. 1 ¶¶ 99.a to 100.j.) FleetOne and Wex have offered a Declaration by their expert, Terra Dolby, that addresses some of those allegations—namely, those in paragraphs 99.e, 99.h, 99.j, 100.b, and 100.e—concluding, based on Dolby's review of

12

records, that Pineda's allegations with regard to those transactions are mistaken.[2] (Docket No. 61-2 at 2–3, 7–8.) Pineda, in its response to the defendants' Statement of Undisputed Material Facts, apparently concedes that Dolby's analysis is accurate. (Docket Nos. 61 ¶ 7, 66-1 ¶ 7.) In other words, Pineda has conceded that the First Vicky Pineda Declaration, insofar as it stood for the veracity of the Complaint as a whole, was false.

What remains, then, is the question of whether the plaintiffs can defeat summary judgment based on the Second Vicky Pineda Declaration's vouching for the accuracy of the allegations in the original Complaint, despite the fact that the plaintiffs (1) have admitted that some of those allegations were, in fact, inaccurate and (2) have failed to produce any expert analysis or additional documentary support for the remaining allegations. A single-paragraph statement declaring, without any support, that the allegations in a now-superseded Complaint are accurate seems, to the court, close to the type of "scintilla of evidence" that the Supreme Court has held to be insufficient for a claim to survive a motion for summary judgment. *Anderson*, 477 U.S. at 252. Nevertheless, the court recognizes that treating it as such would, arguably, be putting too much emphasis on form over substance. If the plaintiffs had simply copied all of the allegations in the original Complaint and re-styled them as a fresh declaration from Ms. Pineda, that declaration would be more than a scintilla of evidence.

The court has attempted to cross-reference Dolby's analysis with the original Complaint, and there appear to be some allegations that Dolby has not addressed. For example, paragraph 99.g alleges non-performance by FleetOne and Wex with regard to an invoice number 4264, involving Integrity Logistics. (Docket No. 1 ¶ 99.g.) That invoice does not appear to have been addressed by

---

[2] Dolby's report also addresses a number of transactions that were included in the Second Amended Complaint but not the original Complaint. Because those transactions were not discussed in the original Complaint, those allegations are not covered by the Second Vicky Pineda Declaration and are, therefore, unsupported by any evidence. Dolby's refutation of those allegations is, therefore, unnecessary.

13

Dolby, leaving the allegation unaffected by the plaintiffs' apparent concession that the Dolby analysis is correct. The court cannot simply impute the admitted falsity of some of the allegations to the rest without engaging in the type of credibility determination that is impermissible at the summary judgment stage. FleetOne and Wex have, accordingly, only shown that they are entitled to summary judgment on the claims addressed in the Dolby Declaration.

FleetOne and Wex point out, persuasively, that their inability to produce more evidence in support of their motion was, in significant part, the result of the plaintiffs' discovery violations. This point is persuasive and justifies one more discovery sanction—namely, that the defendants' window for filing dispositive motions be re-opened. The court will order the plaintiffs to produce all responsive documents and information to the defendants by July 8, 2019. The defendants may file a supplemental motion for summary judgment as to the surviving claims only within 14 days of the receipt of the plaintiffs' discovery materials. If the defendants elect to take depositions before filing a supplemental motion for summary judgment, the deadline for filing the supplemental motion shall be 14 days from the completion of the depositions. If, at any time, the court finds that the plaintiffs have failed to comply with these obligations, their remaining claims will be dismissed. The plaintiffs, having missed the deadline for seeking any discovery of their own, shall not receive the benefit of any enlarged window for doing so.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion for Sanctions or, in the Alternative, to Compel (Docket No. 55) will be granted in part and denied in part, and their Motion for Summary Judgment (Docket No. 59) will be granted in part and denied in part. Pineda Transportation, LLC, and Pineda Investment Group, LLC, will be ordered to pay attorney's fees and costs related to the defendants' attempts to enforce the plaintiffs' discovery obligations, and they will be ordered to

comply with the discovery schedule outlined above and in the accompanying order. The defendants' deadline for filing a supplemental dispositive motion will be extended to 14 days following the completion of the ordered discovery. The defendants will be granted summary judgment with regard to all fraud claims and all claims related to transactions identified in the Dolby Declaration. All claims against Michael Sturm will be dismissed.

    An appropriate order will enter.

                                                ALETA A. TRAUGER
                                                United States District Judge