UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PINEDA TRANSPORTATION, LLC, )<br>and PINEDA INVESTMENT GROUP, )<br>LLC, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>FLEETONE FACTORING, LLC, )<br>and WEX BANK, )<br> )<br>Defendants. ) | Case No. 3:18-cv-00089<br>Judge Aleta A. Trauger |

# MEMORANDUM & ORDER

Pineda Transportation, LLC and Pineda Investment Group, LLC (collectively, "Pineda Companies") have filed a Motion for Relief Pursuant to Federal Rule of Civil Procedure 60(b) (Doc. No. 102), to which FleetOne Factoring, LLC ("FleetOne") and WEX Bank ("WEX") have filed a Response (Doc. No. 112), and Pineda has filed a Reply (Doc. No. 115). For the reasons set out herein, the motion will be denied.

## I. BACKGROUND

The parties are familiar with the history of this case. On January 29, 2018, the Pineda Companies, represented by attorney John Tennyson, filed a Complaint against FleetOne, WEX, and a later-dismissed individual defendant.[1] (Doc. No. 1.) The Complaint purported to state various claims associated with the parties' business dealings, which involved the collection of invoices. The Pineda Companies also sought a temporary restraining order, which the court denied following a contested hearing on February 8, 2018. (*See* Doc. Nos. 5, 22.) On March 15, 2018, the

---

[1] Another plaintiff was included but is no longer part of the case and has not joined in the pending motion.

defendants filed a Motion to Dismiss. (Doc. No. 38.) On May 9, 2018, the court granted the motion in part and denied it in part, dismissing the plaintiffs' civil RICO claims and claims for declaratory relief. (Doc. No. 44 at 1.)

At that point, the case should have progressed toward ordinary resolution by summary judgment, trial, or settlement. However, as detailed in the court's Memorandum of February 3, 2020, counsel for the Pineda Companies, Tennyson and his colleague James R. Wiggington, repeatedly failed to comply with discovery obligations. (Doc. No. 86 at 2–5.) On May 1, 2019, FleetOne and WEX filed a motion seeking sanctions against the plaintiffs, up to and including dismissal of the claims (Doc. No. 55), which the plaintiffs opposed (Doc. No. 62). Not long after filing the sanctions motion, FleetOne and WEX filed a Motion for Summary Judgment. (Doc. No. 59.) The plaintiffs filed a short, poorly supported Response to that motion. (Doc. No. 66.)

On June 24, 2019, the court filed a Memorandum and Order granting both motions in part and denying them both in part. (Doc. Nos. 69–70.) The court granted summary judgment to the defendants with regard to all but a few of the plaintiffs' claims, finding that the defendants had adequately addressed most of the plaintiffs' allegations but had failed to demonstrate grounds for summary judgment with regard to a handful of specific transactions. The court declined to dismiss the plaintiffs' remaining claims as a discovery sanction, but the court held that, as a form of lesser sanction, the defendants' dispositive motion deadline would be reopened to allow the defendants to file another motion for summary judgment regarding the remaining transactions. The court also granted to the defendants attorney's fees and costs related to their attempts to enforce the Pineda Companies' discovery obligations. (Doc. No. 69 at 14–15.)

On July 22, 2019, the defendants filed a Supplemental Motion for Summary Judgment, accompanied by additional documentation and analysis by their expert. (Doc. No. 73 at 2; Doc.

No. 75.) On August 9, Pineda filed a four-page Response to the Supplemental Motion for Summary Judgment. (Doc. No. 81.) On February 3, 2020, the court granted the motion and entered judgment in the defendants' favor. (Doc. Nos. 86–88.) In its opinion, the court noted that, despite the fact that the parties were, by that point, on the defendants' second motion for summary judgment, the Pineda Companies continued to make little specific effort to refute the defendants' arguments, relying instead on vague promises of future evidence that would support their claims. The court observed that such arguments misunderstood a non-movants's burden under Rule 56:

> [The Pineda Companies have] already been granted significantly more leeway than [they were] actually entitled to in responding to the defendants' arguments. A party can only keep litigation going for so long based on promises that its case will come together tomorrow, particularly where any delays have been the fault of that party in the first place. The court will grant the defendants summary judgment in full.

(Doc. No. 86 at 12.) The Pineda Companies did not appeal, and the court closed the case file.

Nearly two years passed until, in January of 2022, Vicky Pineda sent the court a letter "request[ing] the court for time . . . to hire a new lawyer to continue with [her] case." (Doc. No. 89-1 at 1.) Ms. Pineda explained that Tennyson had not only failed to tell her that her company had lost the case but had, in fact, actively deceived her into believing that the case was still pending well into 2021, going so far as directing her to hire a forensic auditor "to evaluate the records for the court." (*Id.*) According to the letter, that auditor, in the course of performing his work, discovered that Tennyson had mishandled the case, and he informed Ms. Pineda of that opinion. (*Id.*) Ms. Pineda wrote that, since she discovered Tennyson's failures, she had "been looking to hire a new lawyer" but had been unable to do so because, in her view, every attorney she had approached was "afraid of" FleetOne. (*Id.* at 4.)

On January 13, 3022, the court entered an Order acknowledging the letter and explaining that, if the Pineda Companies "wishe[d] to attempt to reactivate this case in some way, a motion

3

[would] have to be filed with the Clerk of this court." (Doc. No. 89 at. 1.) The court also stated that "any complaints about [the Pineda Companies'] former counsel should be filed with the Board of Professional Responsibility" and noted that Ms. Pineda "may contact the Lawyer Referral Service for the Nashville Bar Association in an attempt to secure new counsel." (Doc. No. 89 at 1.) Ms. Pineda refiled the letter as a motion—without obtaining new counsel—and the court referred it to the Magistrate Judge. (Doc. No. 92.)

On January 28, 2022, the Magistrate Judge filed a Report & Recommendation concluding that, "[b]ecause the filings were by individuals who do not purport to be licensed attorneys on behalf of corporate entities, the filings are fatally defective." (Doc. No. 93 at 1.) Before the court could act on the Report & Recommendation, Ms. Pineda—still unrepresented and still purporting to act on behalf of her LLC—filed a "Motion to Appeal." (Doc. No. 94.) On February 4, 2022, the Sixth Circuit informed Ms. Pineda that her appeal would "be held in abeyance until after the district court rules on pending motions . . . and jurisdiction transfers to the Sixth Circuit Court of Appeals." (Doc. No. 95 at 1.) On February 14, 2022, the court adopted the Report & Recommendation. (Doc. No. 97.) On March 9, 2022, the Sixth Circuit dismissed the appeal as untimely. (Doc. No. 99.)

Three more months passed. On June 2, 2022, John Tennyson—who appears to have been, by that point, long out of touch with Ms. Pineda—was permanently disbarred from the practice of law for improperly retaining thousands of dollars of a different client's funds.[2] On June 17, 2022, two new attorneys—John Nefflen and Rebekah Shulman—filed Notices of Appearance on behalf of the Pineda Companies in this case.[3] (Doc. Nos. 100–01.) On the same day, the new attorneys

---

[2] Order available at https://docs.tbpr.org/tennyson-3182-wilson-county-lawyer-disbarred-1.pdf. Wiggington has been suspended since August of 2021. *See* https://www.tbpr.org/attorneys/033724 (last checked, Nov. 21, 2022).

[3] Two additional new attorneys representing the Pineda Companies, Joshua Caldwell and Sarah Santos, had not yet been admitted to practice before this court but have since been admitted *pro hac vice*. (Doc. No. 111.)

4

filed a Motion for Relief Pursuant to Federal Rule of Civil Procedure 60(b), asking the court "to reopen this case." (Doc. No. 102 at 1.) The Pineda Companies argue that reopening the case is necessary in the interest of justice because Tennyson, as the companies' counsel, did not competently prosecute their claims and then actively concealed the disposition of the case for more than a year.

The Pineda Companies supported the motion with Affidavits of Vicky Pineda and her son Christian Pineda. (Doc. Nos. 103-1, -2.) A substantial portion of each affidavit is devoted to the merits of the underlying claims. Regarding the wrongdoing by the Pineda Companies' attorneys, Vicky Pineda wrote:

> 23. In or around September 2021, I learned that Tennyson admitted on behalf of Pineda Transportation and in papers filed with the Court that no material issue of disputed fact existed in response to the Defendants' motion for summary judgment. Tennyson took this action without prior notice or consent from Pineda Transportation.
>
> 24. Until September 2021, Pineda Transportation believed the Lawsuit remained pending based on Tennyson's communications with Pineda Transportation. However, in or around September 2021, Pineda Transportation learned from its accountant that Judge Trauger entered a judgment against it on or around February 3, 2020 (the "Judgment").
>
> 25. After learning about the Judgment, I notified my son Christian Pineda, who is the owner of Pineda Investment Group, LLC ("Pineda Investment"), a co-plaintiff in the Lawsuit.
>
> 26. Prior to September 2021, Tennyson did not provide Pineda Transportation with any notice or information about the Judgment. On or about June 23, 2021, Pineda Transportation texted Tennyson and asked him for a case status update.
>
> 27. On or about September 1, 2021, I sent information about the Judgment to Tennyson. Tennyson responded that the Judgment only related to part of the case and that the case was "stayed." A true and correct copy of this text message exchange with Tennyson is attached to this affidavit and incorporated herein as Exhibit A-4.
>
> 28. I later learned, however, that the case was not stayed as Tennyson told me.

> 29. Had I learned about the Judgment on or about February 3, 2020, I would have acted and asked Tennyson to file a motion with the Court to reconsider its ruling and allow Pineda Transportation to continue prosecuting its Lawsuit, including producing and presenting more evidence supporting its claims against Defendants FleetOne Factoring, LLC, WEX Bank, and Michael Sturm.
>
> 30. At or around the time Pineda Transportation discovered the Judgment, it was in the process of engaging a forensic accountant to assist in the litigation efforts and establishing expert testimony in support of their claims, as Tennyson previously requested.
>
> 31. After September 1, 2021, I have not communicated with Tennyson despite Pineda Transportation's continued requests for information from him.

(Doc. No. 103-1 ¶¶ 23–31.) Ms. Pineda confirmed that she has filed a complaint against Tennyson with what she refers to as "the State Bar of Tennessee," which the court assumes refers to the Tennessee Board of Professional Responsibility. (*Id.* ¶ 33.)

## II. LEGAL STANDARD

Rule 60 provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). A Rule 60(b) motion premised on any of the first three of those grounds—that is, mistake/excusable neglect, new evidence, or fraud—must be filed "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Because more than a year passed before the Pineda Companies filed their motion and because they do not

argue that the judgment should be set aside pursuant to Rule 60(b)(4) or (5), the only ground available to them is the catchall provision of Rule 60(b)(6).

Rule 60(b)(6) applies only in "exceptional or extraordinary circumstances where principles of equity mandate relief." *Miller v. Mays*, 879 F.3d 691, 698 (6th Cir. 2018) (citations and internal quotation marks omitted). Even if such circumstances arguably exist, a motion under Rule 60(b)(6) must be filed "within a reasonable time." Fed. R. Civ. P. 60(c)(1). "A reasonable time depends on the factual circumstances of each case, and a moving party must articulate a reasonable basis for delay." *Tyler v. Anderson*, 749 F.3d 499, 510 (6th Cir. 2014) (internal citations omitted). The ultimate decision to grant or deny a motion under Rule 60(b)(6) is within the court's reasonable discretion, with the caveat that the court should exercise that discretion in light of the established caselaw stressing that relief under that subsection is limited to "extraordinary circumstances." *Buck v. Davis*, 137 S. Ct. 759, 777 (2017) (citation omitted).

### III. ANALYSIS

"[S]traightforward claims of attorney error and strategic miscalculation . . . do not satisfy th[e] rigorous standard" of Rule 60(b)(6). *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 596 (6th Cir. 2002). The Sixth Circuit has recognized, however, that, "[i]n rare cases, . . . a lawyer's failures [may be] sufficiently egregious to warrant relief" under that subsection. *Doyle v. Mut. of Omaha Ins. Co.*, 504 F. App'x 380, 383 (6th Cir. 2012) (citing *Valvoline Instant Oil Change Franchising, Inc. v. Autocare Assocs., Inc.*, 173 F.3d 857 (Table), 1999 WL 98590, at *4-6 (6th Cir. Jan. 26, 1999); *Fuller v. Quire*, 916 F.2d 358, 361 (6th Cir. 1990)); *see also Nair v. Columbus State Cmty. Coll.*, No. 2:02-CV-595, 2006 WL 13233, at *3 (S.D. Ohio Jan. 3, 2006); *Reno v. Int'l Harvester Co.*, 115 F.R.D. 6, 8–9 (S.D. Ohio 1986). The Pineda Companies argues that this is such a case.

7

It is difficult to dispute that at least some of Tennyson's actions in his representation of the Pineda Companies were egregious. A bare showing of wrongdoing, however—even quite significant wrongdoing—is not necessarily sufficient, in and of itself, to warrant reopening a case. Setting aside a judgment at this late stage is a step reserved for only the most "unusual and extreme situations." *Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001). One reason for that, as the defendants note, is that the Federal Rules of Civil Procedure are designed to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Reopening a case years after it was fully litigated and closed necessarily involves sacrificing the latter two of those virtues—speed and economy—in favor of the first, justice. And when justice actually requires such a step, then that is the choice that the court must make. The Pineda Companies, however, have not shown that this is such an instance, particularly in light of (1) the Pineda Companies' own delays, (2) the fact that Tennyson's most egregious actions took place after summary judgment had already been granted, and (3) the prejudice and injustice to FleetOne if the court were to resurrect this lawsuit.

In the Pineda Companies' briefing in support of the pending motion, they concede that, for relief to be appropriate, their predicament would have to be attributable not only to "gross neglect by counsel*"* but also "an absence of neglect by the party." (Doc. No. 103 at 11 (emphasis omitted).) *See Fuller*, 916 F.2d at 361 (citing client's "reasonable diligence" as support for granting motion). Tennyson, as poor as his representation was, did not force the Pineda Companies to wait an additional eight months after Vicky Pineda discovered Tennyson's wrongdoing, including several months after sending her initial letter to the court, before finally hiring new counsel and filing an appropriate motion. Nor did Tennyson force Pineda to waste this court's and the Sixth Circuit's time with procedurally improper challenges to the judgment. Pineda's original excuse for those

8

delays—that all available attorneys were simply too afraid of FleetOne to represent Pineda—is, moreover, entirely unconvincing and unsupported. The Pineda Companies may have been, as they now stress, unsophisticated, but they were also significant commercial enterprises, and the federal courts routinely hear claims against defendants far more powerful than FleetOne. The plaintiffs could have found attorneys. Indeed, eventually, they did.

As for the nature and timing of Tennyson's wrongdoing, it is helpful to distinguish between his representation prior to summary judgment—which was markedly deficient in ways that, though unfortunate, were not entirely unusual—and his later concealment of the outcome of the case, which was truly beyond the pale. While the representation that Tennyson provided while the claims were still pending was, without a doubt, very poor, it did not constitute the kind of outright "abandonment or sabotage" of representation that has sometimes been held to warrant invocation of Rule 60(b)(6). *See Soto v. Mineta*, No. 01-71244, 2008 WL 4428010, *7-15 (E.D. Mich. Sept. 30, 2008) (collecting cases). Rather, Tennyson fully litigated the case through the adversarial process and lost. He abandoned his clients later.

The distinction between abandoning a case and litigating it poorly matters both because it renders this situation less extraordinary and because it adds to the potential injury of casting all of the defendants' previous efforts aside and beginning again. This case did not end because Tennyson simply left it to rot on a docket, and the defendants' success was not obtained through the relatively inexpensive process of resting on its Answer and appealing solely to issues of waiver and default. Rather, Tennyson sought a temporary restraining order, participated in a contested hearing on that motion, actively litigated multiple discovery disputes, and opposed three dispositive motions. FleetOne, in turn, briefed the allegations against it extensively and presented the anticipated contents of expert testimony on dozens of transactions. Then, when the court

9

declined to grant FleetOne summary judgment in full, FleetOne procured even more complex financial analysis and briefed the issues again.

The court granted summary judgment to the defendants after nearly two years of active litigation, and, while that ruling was apparently improperly concealed from the Pineda Companies, the only difference in the course of proceedings that Ms. Pineda has been able to identify based on that omission is that no timely motion for reconsideration was filed. The likelihood of such a motion's success, however, would have been exceedingly low, particularly given the fact that the Pineda Companies had already had two chances to litigate the underlying questions. *See J.P. v. Taft*, No. C2-04-692, 2006 WL 689091, at *1 (S.D. Ohio Mar. 15, 2006) (discussing standard for considering motion to reconsider award of summary judgment). The degree to which the actual outcome of this litigation can be attributed to Tennyson's most egregious actions—as opposed to his more mundane bad lawyering—is therefore limited.

The Pineda Companies argue that the court should ignore the past costs that the defendants incurred and focus only on whatever new prejudice, if any, that the defendants would face if the motion were granted. (Doc. No. 103 at 16 (citing *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 842 (6th Cir. 2011).) The Pineda Companies' argument appears to confuse a technical question about how to define "prejudice" with an outright bar on acknowledging an otherwise obviously relevant equitable consideration. As the Pineda Companies admit, the court must make its decision under Rule 60(b)(6) based on the "the broad equities of the case" and the "interest of justice." *Fuller*, 916 F.2d at 361. The Supreme Court, moreover, has stated that a district court, in making such a decision, may consider "the risk of injustice to the parties." *Buck*, 137 S. Ct. at 778 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)). Whether one

considers the defendants' past costs as a species of prejudice or as a wholly separate factor, they are plainly relevant to the court's analysis.

In any event, even if the court limits its prejudice inquiry as requested, the potential for prejudice in this case remains significant. The defendants have produced evidence that, after the case was closed, FleetOne lifted its internal litigation hold and ceased its indefinite retention of relevant evidence—as it had every right to do. (Doc. No. 113 ¶ 3.) Moreover, potential employee witnesses have left the company, and any witness's memory has undoubtedly degraded with time. (*Id.* ¶¶ 2, 5.) At the same time, however, the Pineda Companies apparently continued to proceed as if litigation was still ongoing. The fact that the Pineda Companies apparently held out continuous hope that litigation would resume, while the defendants reasonably moved on, would likely translate to a significant, unjust litigation advantage for the plaintiffs.

Allowing the Pineda Companies to resurrect their claims now, after so much effort was expended, would not serve the interest of justice, let alone be *mandated* by it. That holding is bolstered by the fact that, even after it became apparent to the Pineda Companies that their potential claims had been squandered, they were still slow in obtaining representation and taking appropriate steps to remedy the situation, choosing instead to pursue time-wasting and procedurally improper attempts to proceed *pro se*. The court is sensitive to the fact that, according to the Pineda Companies' new lawyers, the companies' owners lack a sophisticated understanding of the legal system. That, though, is true of many litigants—including many who do not own trucking companies or have anywhere near the level of resources that that ownership implies. Many of those litigants' cases undoubtedly suffer because the clients are unable to effectively monitor and evaluate the performance of their attorneys. Few of those other litigants, however, receive any kind

11

Case 3:18-cv-00089   Document 117   Filed 11/22/22   Page 11 of 12 PageID #: 1373

of chance for a do-over, and the Pineda Companies have failed to show that this case should be the rare exception. The court will accordingly deny the motion.

## IV. CONCLUSION

For the foregoing reasons, Pineda's Motion for Relief Pursuant to Federal Rule of Civil Procedure 60(b) is hereby **DENIED**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge

12

Case 3:18-cv-00089   Document 117   Filed 11/22/22   Page 12 of 12 PageID #: 1374